## WILLIAMS v. ADAMS et ux.

### No. 13313.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 31, 1936.

Rehearing Denied Feb. 28, 1936.

Felix M. Bransford, Julien C. Hyer, and A. W. Christian, all of Fort Worth, for appellant.

Hugh L. Small and J. R. Black, both of Fort Worth, for appellees.

DUNKLIN, Chief Justice.

A collision occurred between a motorcycle and an automobile at the crossing of Capps street, running east and west, and Jennings avenue, running north and south, two public streets of the city of Fort Worth. Woody McKesson was driving the motorcycle, and Raymond Adams was riding on the rear seat of the machine and was killed in the accident. H. A. Williams was driving the automobile.

Raymond Adams was survived by his parents, W. R. Adams and wife, Cornelia Adams, who recovered a judgment against Williams for the sum of $3,000, based on allegations in plaintiffs' petition and findings of the jury that the collision and death of their son was proximately caused by the negligence of the defendant, Williams, in certain particulars not necessary to be stated in view of our conclusions hereinafter shown. Williams has appealed.

In addition to a general and special denial of the allegations in plaintiffs' petition, defendant specially pleaded a written contract of settlement which was executed by the parties to the suit on the day after the accident, which was introduced in evidence and is as follows:

"Fort Worth, Texas, April 19th, 1933.

"In the accident in which a motorcycle crashed into the front part of the automo-

bile owned and operated by H. A. Williams, in which accident Raymond Adams was killed, it has been agreed, that while said Williams does not agree that he was responsible for any phase of said accident, in view of the impoverished and unfortunate family, he has agreed to pay funeral expenses of said Adams, provided the parents and kin agree to release him from any and all liability in the cause and circumstances of his death.

"Witnesses:

"Mrs. M. W. Reid

"[Signed] H. A. Williams,
"This 20th day of
April, 1933.

"Mrs. S. W. Ray    W. R. Adams
"Mrs. W. R. Adams."

The evidence shows that defendant performed his obligation in that contract.

By supplemental petition, plaintiffs alleged that they executed that contract not knowing that it was a release, and were induced to sign the same by representations made to them by the defendant that the instrument was merely a statement that plaintiffs would not institute a criminal prosecution against him for killing their son.

Following is the only issue submitted to the jury bearing on that defense, with the finding of the jury thereon:

"Special Issue No. 31:

"Do you find from a preponderance of the evidence that at the time the plaintiffs, Mr. and Mrs. Adams, signed the release which has been introduced in evidence in this case that they signed the same without full knowledge of the contents of said instrument?

"Answer 'Yes' or 'No.'

"Answer: Yes."

The court refused to submit the following special issues that were requested by the plaintiffs:

"10. Was the release signed by the plaintiffs herein intended by them to be a full and complete settlement and discharge of all liabilities of the defendant? Answer 'Yes' or 'No.'

"11. Did the defendant, H. A. Williams, when presenting the release to the plaintiffs tell them that it was an agreement not to prosecute him on a criminal charge? Answer 'Yes' or 'No'.

"12. If you have found that the defendant did tell the plaintiffs that the release signed by them was an agreement not to prosecute him on a criminal charge did plaintiffs believe the statement so made by the defendant and rely upon the same? Answer 'Yes' or 'No'."

But plaintiffs have not filed any cross assignment of error here to that action of the court and therefore are in no position to complain of that ruling, since it cannot be said that the refusal of those requested issues presents fundamental error. 3 Tex.Jur. § 569, p. 802. Furthermore, it is shown by uncontradicted testimony that plaintiffs were given ample opportunity to read the agreement before they signed it.

■ According to the well-settled rule of law announced in 10 Tex.Jur. § 57, page 98, and 30 Tex.Jur. § 10, p. 806, and section 11, p. 807, and the multitude of decisions cited in support of the text, the finding of the jury, that plaintiffs signed the release "without full knowledge of the contents of the instrument," was insufficient to avoid the force of that contract as a complete bar to their suit.

■ Accordingly, we sustain the assignment of error to the refusal of the trial court to render a judgment in favor of the defendant notwithstanding the verdict. Hence, the judgment in plaintiffs' favor is reversed and judgment is here rendered denying plaintiffs the relief prayed for, without the determination of the merits of other assignments of error, which is unnecessary.

On Motion for Rehearing.

Appellees insist that we were in error in rendering judgment in favor of appellant after reversing the judgment in the court below instead of remanding it for a new trial.

When the judgment of the trial court is reversed, the disposition to be made of the case is controlled by article 1856, R.C. S., which is as follows:

"When the judgment or decree of the court below shall be reversed, the court shall proceed to render such judgment or decree as the court below should have rendered, except when it is necessary that some matter of fact be ascertained or the damage to be assessed or the matter to be decreed is uncertain, in either of which cases the cause shall be remanded for a new trial."

And all of the decisions upon that point show that they are based upon those statutory provisions. The leading case is Sovereign Camp, W. O. W. v. Patton, 117 Tex. 1, 295 S.W. 913, in which it is pointed out that that statute is mandatory and that in case of a reversal the appellant shall have the right to a rendition of the judgment in his favor if the court below should have rendered such a judgment, in the absence of exceptions stated in the latter portion of the article. The right of the appellee to a remand of the case for a new trial is given in the latter part of the article as an exception to the first provision, "when it is necessary that some *matter of fact* be ascertained or the *damage to be assessed* or the matter to be decreed is *uncertain.*" (Italics ours.) The right thus accorded to the appellant in the first portion of that article is of equal dignity to that of the appellee under the subsequent provisions of the article.

■ In order to recover, the plaintiffs had the burden of showing a right to a cancellation of the written contract of settlement as a condition precedent to a recovery of the damages sought on the merits.

■ We failed to note that the three requested issues copied in our original opinion were included in a group of sixteen special issues all in one document, attempting to cover the whole case, with numerous definitions and instructions in connection therewith, and many of those issues had already been submitted in the court's main charge; and therefore appellees were in no position to complain of the refusal to submit the issues pointed out in our original opinion even if they had filed a cross assignment of error to such refusal. St. Louis Southwestern R. Co. v. Hill Bros. (Tex.Civ.App.) 80 S.W.(2d) 432, and decisions cited; Sessums v. Citizens' National Bank (Tex.Civ.App.) 72 S.W.(2d) 403; Largent v. Etheridge (Tex.Civ.App.) 13 S.W.(2d) 974; Oil Well Supply Co. v. Jowell (Tex.Civ.App.) 48 S.W.(2d) 406; Article 2189, R.C.S.

■ It is also a familiar rule, as announced in Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084, 1085, that "when the omitted issue constitutes a complete ground of recovery, or a complete defense, a failure to request a submission of that issue waives said ground of recovery or said ground of defense."

The decisions, holding that when a judgment of the trial court is reversed same should be remanded for another trial, are all based upon the second portion of article 1856, specifically expressed as an exception to the first portion requiring a rendition of the judgment.

The only ground for appellees' contention that the cause should be remanded is that it is necessary that other matters of fact be ascertained which were not determined on the trial below, to wit, the issue whether or not they were induced to execute the contract of settlement through fraud of the defendant, as alleged in the petition. On this point, and as indicating such further facts to be ascertained, appellees have this to say in their motion for rehearing:

"The record discloses the following undisputed facts:

"That the appellant, a man eighty-three years of age, scrawled the instrument in question on a piece of paper in long hand and the appellee, W. R. Adams, stated that he did not read the instrument and could not have done so if he had tried and his wife was in bed and was likewise incapable of reading it and upon requesting appellant to read it to her he failed or refused to do so and it was therefore unnecessary to submit an issue to the jury on this point."

And it is further pointed out that the evidence shows that when the appellees signed the contract of release they were in great mental distress on account of the sudden death of their son and by reason of which they were unable either to read the instrument or to understand its meaning. No contention is made that the case comes within any other of the exceptions stated in the statute quoted.

The failure of the appellees to complain by cross assignment of error of the refusal to submit the three requested issues pointed out in our original opinion manifested an election to risk their right to an affirmance of the judgment of rescission of the contract of settlement on the one finding of the jury shown in our original opinion that they signed the same without full knowledge of its contents; and therefore they must be held to have abandoned the right to complain of the refusal of those issues even if they had been properly requested, and some evidence introduced to support a finding favorable to them. And the election to so treat the

record is indicated in the concluding-paragraph of an extensive brief filed herein before the submission of the case, reading as follows:

"For the foregoing reasons herein set forth, the appellees, W. R. Adams and wife, Cornelia Adams, respectfully submit to this Honorable Court that the judgment of the lower court properly disposed of all issues and matters in controversy involved in this suit and that there exists no error warranting reversal and that this cause should be in all respects affirmed."

Furthermore, "a failure to assign error operates as an abandonment or waiver of the objection. And the question may not thereafter be presented or considered on appeal." 3 Tex.Jur. § 572, p. 811.

The requirement for a remand of the case "when it is necessary that some matter of fact be ascertained" can have no proper application if its application would give the complaining party a right which he has waived.

It is therefore our conclusion that a remand of the case for a new trial would be a denial of appellant's statutory right to a rendition of the judgment in his favor, under the provisions of article 1856; it appearing from the record that the facts involved have been fully developed on this, the second trial of the case.

Accordingly, the motion for rehearing is overruled.